IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2022

**CEDRIC EVANS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-20-18  Kyle C. Atkins, Judge**

_____

**No. W2021-00379-CCA-R3-PC**
_____

Cedric Evans, Petitioner, sought post-conviction relief from his guilty-pleaded convictions for second degree murder and felon in possession of a firearm, claiming that he received ineffective assistance of counsel.  Following a hearing, the post-conviction court dismissed the petition.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Cedric Evans.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

We glean from the transcript of the February 15, 2019 plea submission hearing that the Madison County Grand Jury indicted Petitioner for first degree premeditated murder (Count 1) and convicted felon in possession of a firearm, having been convicted of a felony drug offense. (Count 2).[1]  Petitioner pleaded guilty as a Range II offender to second degree murder in Count 1 and the charged offense in Count 2, and the trial court imposed the agreed upon sentence of thirty-five years' incarceration at one hundred percent service for

_____

[1] Although the record on appeal does not include a copy of the indictment or the judgments of conviction, the record contains the transcript of the plea submission hearing and is adequate for a meaningful review of the issues presented.

second degree murder and a concurrent ten-year sentence at thirty-five percent service on the firearm charge.[2]

At the February 15, 2019 plea hearing, the State presented the following factual basis for the plea:

> [O]n or about Tuesday, January 12th, 2016, at approximately 10:00 p.m. officers of the Jackson Police Department responded to a report of a shooting [on] Old Hickory Boulevard, the [V]illages Apartments.
>
> Upon arrival, officers discovered a gray Pontiac parked in front of Building Number 7. The vehicle had damage caused by gunfire.
>
> Officers saw the body of Mondarrius Miller lying in the vehicle. Miller had multiple gunshot wounds to his body and there were several .45 caliber spent casings around the vehicle. Miller was later pronounced dead as a result of these wounds.
>
> Witnesses saw two men running from the area after hearing gunshots. The witnesses directed the officers to a silver Chevy 22 Impala, which was parked [on] Old Hickory Boulevard. The witnesses said that they saw the men that they had seen running from the area of the shooting enter this vehicle.
>
> The men were described as wearing hoodies as they entered the car. The suspects were then seen running north from the silver Impala and behind the apartment complex. The suspects had fled the scene prior to officers arriving in the area.
>
> Officers observed items in the vehicle consistent with the witnesses' descriptions. A search warrant was obtained for the silver -- silver Chevy Impala. A search of the vehicle led to the recovery of a Glock .45 caliber handgun, a hoodie, shirt, and gloves. These items were sent to the Tennessee Bureau of Investigations' crime laboratory for forensic testing.
>
> The handgun recovered matched the casings and projectiles recovered at the crime scene. DNA recovered from the handgun, shirt, and gloves

---

[2] Petitioner, who was a Range I offender, agreed to plead as a Range II offender to secure a plea agreement. At the plea submission hearing, Petitioner acknowledged that trial counsel explained how an out-of-range plea worked and that he understood, if he were convicted of first degree murder, he would be sentenced to life.

matched to [Petitioner]. DNA recovered from the hooded sweatshirt on the passenger side floorboard matched to Cornelius Jones.

Cornelius Jones' girlfriend, Jessica Jones, told investigators that Cornelius was with [Petitioner] the night Miller was killed. Jessica also stated that Cornelius did not contact her until two days after the murder because he was taken to St. Louis, Missouri, by [Petitioner].

Petitioner filed a pro se Petition for Post-Conviction Relief claiming that he was denied the effective assistance because trial counsel failed to properly investigate his case and failed to properly advise him concerning his guilty plea and his sentence. He also claimed that counsel committed "unprofessional errors" and that his sentence was in direct contravention of 1989 Sentencing Act. After finding Petitioner indigent, the post-conviction court appointed counsel. No amended petition was filed.

At an evidentiary hearing, Petitioner stated that he retained trial counsel and that trial counsel met with him five or six times before the guilty plea submission hearing to discuss his case and to go over the discovery. Petitioner testified that he "was being threatened by other inmates" while in jail and that his family was also being threatened. He claimed that he was attacked "once or twice" while he was incarcerated. He said that, if trial counsel would have listened to him, counsel could have "probably" gotten him "a lesser[-]included offense" or could have gotten his sentence reduced. He explained that trial counsel said he "needed to take the plea because [counsel] didn't want to see [Petitioner] get life." Petitioner claimed that he felt pressured to plead guilty.

On cross-examination, Petitioner agreed that he did not tell trial counsel or the sheriff that he was being threatened or that he had been attacked. During his plea colloquy, he told the trial court that he was pleading guilty freely and voluntarily and that he was not being forced or coerced to plead guilty.

Trial counsel testified that he obtained discovery from the State and met with Petitioner numerous times to review the evidence and discuss the case. Counsel filed a motion for discovery and a motion for a forensic psychological examination of Petitioner. Following the examination, Petitioner was found competent to stand trial. Counsel said that Petitioner never told him that Petitioner or Petitioner's family was being threatened. Counsel testified that the evidence of Petitioner's guilt "was overwhelming."

The post-conviction court entered a written order in which it accredited trial counsel's testimony that he "made at least five or six visits with Petitioner and obtained discovery and discussed the discovery" with Petitioner. The court noted that Petitioner was originally charged with first degree murder and was facing a significantly longer

sentence than the sentence he received by virtue of the plea agreement. The court found that "the advice given [to Petitioner] and the services rendered by trial counsel were certainly within the range of competence demanded of attorneys representing defendants in criminal cases" and that Petitioner "failed to show that his attorney's performance was deficient or that any alleged deficient performance somehow prejudiced [] Petitioner."

The post-conviction court noted that, during the guilty plea hearing, the trial court "was very careful to explain to [Petitioner] all the rights that he was waiving and the exact terms of the plea agreement" and "asked numerous questions and allowed [Petitioner] every opportunity to respond." The court also found that Petitioner "had a full and complete understanding of his plea and [that] his plea was entered freely, knowingly and intelligently." The court found that Petitioner failed to prove the factual allegations in his Petition by clear and convincing evidence and denied post-conviction relief.

## Analysis

On appeal, Petitioner claims that the post-conviction court erred in dismissing his petition because Petitioner "was deprived effective counsel in the plea process and prior to entering his plea." The entire factual statement supporting Petitioner's argument consists of one sentence: "[Petitioner] testified that he, as stated in his petition for post-conviction relief, felt his plea was entered under pressure and that he was misled by his attorney into making a rash decision regarding his guilty plea." The State argues that Petitioner presented no proof that counsel was deficient or that Petitioner was prejudiced. We agree with the State.

To prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a

petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579.

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Crim. App. April 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

In this case, Petitioner was facing a sentence of life if convicted of first degree murder in Count 1. Petitioner testified that he wanted trial counsel to seek an offer from the State so that he could plead guilty to a lesser-included offense with a shorter sentence. That is precisely what trial counsel did in Count 1. The post-conviction court accredited the testimony of trial counsel and found that "the advice given and the services rendered by trial counsel were certainly within the range of competence demanded of attorneys representing defendants in criminal cases[.]" The evidence presented does not preponderate against these findings. *See Kendrick*, 454 S.W.3d at 457. The post-

conviction court found that Petitioner "had a full and complete understanding of his plea and that the guilty plea was entered freely, knowingly, and intelligently." The record clearly supports these findings. Petitioner failed to prove that his counsel's performance fell below the objective standards of reasonableness and professional norms. *Hill*, 474 U.S. at 59.

The judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE